SHERMAN CREEK CONDOMINIUMS, INC.,

        Plaintiff,

  v.

Case No. 19-cv-1735-pp

MID-CENTURY INSURANCE COMPANY,

        Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO BIFURCATE AND STAY PURSUANT TO RULE 42(B) (DKT. NO. 18)**

The plaintiff filed this case in the Western District of Wisconsin, seeking insurance benefits under a policy issued by the defendant due to hail damage to the roofs of buildings within a thirty-one-building complex. Dkt. No. 1. Although the defendant has made payments for the repair to some of the roofs, the plaintiff wants to replace every roof and has, among other things, alleged a bad faith claim. Id. Magistrate Judge Stephen Crocker granted the unopposed motion to transfer the case to this district, dkt. no. 8, and the court has entered several scheduling orders, dkt. nos. 17, 24, 27, 29, 32. On December 19, 2019, the defendant filed a motion to bifurcate and stay under Rule 42(b), dkt. no. 18, along with a supporting brief, dkt. no. 19. The court will grant the motion.

1

## I. Background

### A. The complaint

The plaintiff is a thirty-one-building condominium complex in Jackson, Wisconsin. Dkt. No. 20 at 1. The defendant issued the plaintiff insurance, commercial property and commercial liability policies containing coverage for loss caused by hail. Dkt. No. 3-2 at 4. According to the complaint, a hailstorm damaged the plaintiff's buildings in August of 2018. Id. The defendant hired a roofing contractor to inspect the damage and, relying on the contractor's report, the defendant issued the plaintiff a check for $49,307.23, which it says is the cash value of a single roof. Id.; see also dkt. no. 20 at 1. The plaintiff stresses that because "the entire roofing system is damaged on each building," the roof of each building needs to be replaced. Dkt. No. 20 at 1. The complaint asserts breach of contract, bad faith and statutory interest claims. Dkt. No. 3-2 at 4-9.

The plaintiff alleges that the defendant breached the contract by failing to "properly . . . adjust the claim," refusing to issue timely payments, delaying and obstructing efforts to obtain timely payment by failing to investigate and failing to act in a timely manner to cure its breaches. Id. at 5. The plaintiff alleges damages from pecuniary losses, from "the unavailability of shingles that are currently on the roof" and from the "decreased life and value of the buildings and roofs caused by the hailstorm." Id. at 6.

In the bad faith claim, the plaintiff argues that the defendant breached its duties (1) "of good faith and fair dealings;" (2) "to act in the insured's best

2

interest;" (3) "to promptly acknowledge communications with respect to the claims;" (4) "to promptly perform claim investigation services;" (5) "to provide necessary information and instructions to the insured for compliance and submission of [the] claims;" (6) "to attempt in [] good faith to effectuate a fair and equitable settlement of the claims;" (7) "to provide prompt and reasonable explanation of the basis for the policy and applicable law for any delay and/or denial of benefits;" (8) "to refrain from requiring their insureds to institute suit to recover amounts due and owing under the policy;" (9) "to promptly pay an irrefutable loss in a timely fashion;" (10) to provide certified copies of policies and statements taken of their insured in a timely fashion;" (11) to properly represent the terms and conditions of the policy," and (12) "to honor express and oral commitments to its insureds, including . . . payment for coverage." Id. at 6-7.

The plaintiff's third claim, under Wis. Stat. §628.46, alleges that payment of the claim is overdue and the plaintiff is "entitled to 7.5% interest from the date of the written furnishment of the covered loss on the full amount of the loss." Id. at 8.

In addition to compensatory and statutory damages, the plaintiff seeks punitive damages, interest and costs.

B.  Pleadings on the motion to bifurcate and stay

The defendant asks the court to stay discovery on the bad faith and interest claims. Dkt. No. 18. The defendant argues that a bad faith claim cannot exist without the wrongful denial of benefits under Wisconsin law and,

3

for that reason, Wisconsin courts frequently bifurcate the two claims "until, and if an insured proves a breach of the insurance contract." Dkt. No. 19 at 2-3 (citing Ullerich v. Sentry Ins., 344 Wis. 2d 708 (Ct. App. 2012); Dahmen v. Am. Family Mut. Ins. Co., 247 Wis. 2d 541 (Ct. App. 2001); Brethorst v. Allstate Prop. & Cas. Ins. Co., 334 Wis. 2d 23 (2011)). The defendant contends that denying bifurcation and a stay would cause prejudice. Id. at 3 (citing Dahmen, 247 Wis. 2d at 549). The defendant reasons that "[t]he evidence necessary to support a claim of bad faith is very different from that necessary to support a claim for policy benefits." Id.

According to the defendant, allowing the plaintiff to simultaneously pursue bad faith and breach of contract claims may shift the focus away from the terms of the policy, add additional witnesses and evidence and create the need for a more complex special verdict that could confuse the jury. Id. at 4. The defendant emphasizes that Wisconsin courts require "a finding of a breach of the insurance contract before allowing discovery in a first-party bad faith claim." Id. at 5 (citing Ullerich, 344 Wis. 2d at 718). "[T]his is because breach of contract is only the first element of bad faith." Id. Stressing the "reasonable debate" as to the underlying policy claim, the defendant asserts that the plaintiff cannot show such a breach. Id. at 5-6. If the plaintiff does not prevail on the breach of contract claim, the defendant argues, no further discovery will be necessary.

The plaintiff responds that Rule 42(b) gives the court discretion to bifurcate. Dkt. No. 20 at 2. Conceding that "Wisconsin law favors the

4

bifurcation of breach of contract claims from bad faith claims," the plaintiff contends that "federal courts run in the opposite direction.'" Id. (quoting Xiong v. State Farm Fire & Cas. Co., No. 12-CV-115-WMC, 2012 WL 12995657, at *1 (W.D. Wis. May 29, 2012). The plaintiff asks the court to deny the defendant's motion because bifurcation would be "inconvenient, non-expeditious, and non-economical," "the claims are inextricably intertwined," and bifurcation would prejudice the plaintiff. Id. at 5-9. The plaintiff asserts that bifurcation saves time and resources only if the defendant prevails; the plaintiff maintains that "[u]ntil that point, [] the most efficient use of resources is to keep the matter moving and engage in the discovery process for all claims." Id.

The plaintiff also stresses that the two claims require much of the same evidence and argues that trying them together might avoid unnecessary discovery disputes. Id. at 3-4 (citing Xiong, 2012 WL 12995657 at *1; quoting Fiserv Sols, Inc. v. Westchester Fire Ins. Co., No. 11-C-0603, 2012 WL 2120513, at *3 (E.D. Wis. June 11, 2012)). The plaintiff says that "the overlapping nature of the claims means that discovery on the bad faith claim will already be in progress and [would muddle] the difference between the matters." Id. The plaintiff's argument that the claims are inextricably intertwined reiterates its assertion that the relevant evidence and discovery will overlap. Id. at 4-5.

As to potential prejudice to the defendant, the plaintiff argues that because the evidence will overlap and because the defendant "cannot predict with accuracy which documents from its file will need to be produced for each

5

claim," the risk of prejudice to the defendant is minimal or conjectural. Id. at 5-7 (citing Eide v. Life Ins. Co. of N. Am., No. 09-CV-671-SLC, 2010 WL 1608658, at *2 (W.D. Wis. 2010)). The plaintiff contends that time and cost savings outweigh potential prejudice to the defendant and asserts that bifurcation would chill settlement and drag out the litigation process and "drain [the plaintiff] and its limited resources." Id. at 7-8. The plaintiff describes the defendant as "a large business that will continue to function and will suffer comparatively little in the event that two trials must be . . . had." Id.

In its reply brief, the defendant argues that because the plaintiff has not shown a breach of contract, the plaintiff cannot pursue discovery related to the bad faith claim. Dkt. No. 21 at 1. The defendant stresses the facts and merits of the case, stating that "[i]nstead of a loss of use of the roofs, [the plaintiff] is unhappy with the aesthetics of the repairs." Id. at 1-2. "Both Wisconsin and federal courts," according to the defendant, "have recognized that the issue regarding the extent of replacement of property of like kind and quality is a reasonable debate." Id. at 3 (citing Farmers Auto. Ins. Ass'n v. Union Pac. R. Co., 313 Wis. 2d 93, 114 (2008); Villas at Winding Ridge v. State Farm Fire & Cas. Co., 942 F.3d 824, 832 (7th Cir. 2019)). The defendant asserts that because it believes the debate to be reasonable, the plaintiff cannot show a breach of contract and "[t]hus, there is no legitimate basis for discovery of materials related to a bad faith claim." Id.

6

Case 2:19-cv-01735-PP   Filed 09/08/20   Page 6 of 12   Document 33

## II. Analysis

Wisconsin law controls the substance of the plaintiff's breach of contract and bad faith claims, but the court applies federal procedural law to the defendant's motion to bifurcate and stay. Klonowski v. Int'l Armament Corp., 17 F.3d 992, 995 (7th Cir. 1994) ("As a federal court sitting in diversity, we apply Wisconsin state law to resolve the substantive questions concerning the accident and federal law on any procedural and evidentiary issues.").

The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 42(b) vests the court with the discretion to bifurcate claims under certain conditions.

> First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. *DeWitt, Porter, Huggett, Schumacher & Morgan v. Kovalic,* 991 F.2d 1243, 1245 (7th Cir. 1993). Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation. *MCI Communications v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983). Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. *See Angelo v. Armstrong World Industries*, 11 F.3d 957, 964 (10th Cir. 1993). Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995). The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse. *McLaughlin v. State Farm*, 30 F.3d 861, 870 (7th Cir. 1994).

Houseman v. U.S. Aviation Underwriters, 171 F.3d 1117, 1121 (7th Cir. 1999)

While acknowledging that Wisconsin courts favor bifurcation, the plaintiff cites Judge Conley's decision in Xiong in support of its assertion that "federal courts run in the opposite direction.'" Dkt. No. 20 at 2 (quoting Xiong, 2012 WL 12995657, at *1. In Xiong, Judge Conley stated that

> Wisconsin law favors the relief that defendant seeks. . . . The state courts reason that when breach of contract and bad faith claims are brought in one action, bifurcation is justified because it (1) allows plaintiff to discover attorney-client privileged information in its bad faith claim that would be barred in its contract claim; (2) minimizes jury confusion and prejudice at trial; and (3) promotes judicial economy.
>
> By contrast, federal courts run in the opposite direction. "[T]he normal procedure is to try compensatory and punitive damage claims together with appropriate instructions to make clear to the jury the difference." McLaughlin v. State Farm Mut. Automobile Ins. Co., 30 F.3d 861, 871 (7th Cir. 1994) (approving the district court's refusal to bifurcate breach of contract and tort claims). McLaughlin downplayed the potential of prejudice to the parties and emphasized judicial economy, pointing out that the evidence presented in breach of contract and bad faith claims "usually overlaps substantially." Id.

Xiong, 2012 WL 12995657, at *1 (some citations omitted). Notably, Judge Conley concluded that "[a]lthough McLaughlin was analyzing Indiana contract and tort law, its reasoning applies equally well to [] Wisconsin law." Id.

This court is not so certain. Under Indiana law, breach of contract is not a necessary element of a bad faith claim. See Westfield Ins. Co. v. S&L Builders, LLC, No. 3:19-CV-1026 DRL-MGG, 2020 WL 3264114, at *2 (N.D. Ind. June 17, 2020) ("[The defendant] is wrong that, as a general rule, the bad faith claim will necessarily rise or fall solely on the coverage question.") (citing Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 976-77 (Ind. 2005); Klepper v. ACE Am. Ins. Co., 999 N.E.2d 86, 98 (Ind. Ct. App. 2013)). In

8

Wisconsin, bad faith is an intentional tort distinct from a claim that an insurer breached its contract with an insured. Brethorst v. Allstate Prop. & Cas. Ins. Co., 334 Wis. 2d 23, 28, 36 (2011). But a breach of contract is a "fundamental prerequisite" to proving a bad faith claim; put another way, a plaintiff cannot prevail on a first-party bad faith claim if the defendant properly addressed the plaintiff's claim for policy benefits. Id. at 52; see also Ullerich, 344 Wis. 2d at 718; Dahmen, 247 Wis. 2d at 552. Beyond some breach of contract, a bad faith claim requires proof that the insurer lacked a reasonable basis for denying or delaying policy benefits and that the insurer "acted with 'knowledge or reckless disregard' of the lack." Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n, 839 F.3d 654, 658 (7th Cir. 2016) (citing Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 691-93 (1978)).

When courts in the Eastern District of Wisconsin have granted motions to bifurcate breach of contract from bad faith claims, they have focused on the separate and distinct nature of the claims. See, *e.g.*, Shalock v. State Farm Mut. Auto. Ins. Co., No. 13-C-0538-CNC, 2014 WL 950548, at *1 (E.D. Wis. Mar. 11, 2014); Freda *et al.* v. State Farm Mut. Auto. Ins. Co., No. 12–C–570-CNC, 2013 WL 3829630 (E.D. Wis. July 23, 2013); Poznanski v. Pa. Life Ins. Co., No. 11-C-260-RTR, 2011 WL 2634406 (E.D. Wis. July 5, 2011); Winter v. Liberty Mut. Fire Ins. Co., No. 06-C-800-WCG, 2006 WL 2711804 (E.D. Wis. Sept. 21, 2006). When courts in the district have denied such motions, they have done so based on the threat of duplicitous discovery and protracted litigation. See, *e.g.* Baires Blue Cross Blue Shield of Minnesota v. State Farm

9

Mut. Auto. Ins. Co., No. 16-CV-402-JPS, 2016 WL 4591905, at *4 (E.D. Wis. Sept. 2, 2016); Fiserv Sols, Inc. v. Westchester Fire Ins. Co., No. 11-C-603-CNC, 2012 WL 2120513 (E.D. Wis. June 11, 2013); Ingram v. State Farm Mut. Auto. Ins. Co., No. 10C1108-LA, 2011 WL 1988442 (E.D. Wis. May 19, 2011).

Here, the plaintiff contends that its contract with the defendant required "[t]he entire roofs [] to be replaced, not repaired as when the roofing system is damaged." Dkt. No. 3-2 at 4. The plaintiff states that the defendant's "failure to make payment for all of the roofs" constituted a breach of contract. Dkt. No. 20 at 2. The defendant argues that it satisfied its requirements under the contract when it paid the plaintiff $49,307.43 "for the cost of repairing the shingles/other portions of the roof that incurred direct physical loss." Dkt. No. 19 at 1. The plaintiff characterizes the $49,307.43 as "actual cash value for damage to a single roof." Dkt. No. 20 at 1. The viability of the bad faith claim, therefore, is dependent on the court construing the terms of the contract.

The construction of the language of the contract is a legal question that is unlikely to require substantial (or, perhaps, any) discovery. As the plaintiff states in its opposition brief, "[t]he language of the policy dictates what is covered and must be applied to the claim." Dkt. No. 20 at 5. On the other hand, the bad faith claim focuses on the defendant's decision to hire a contractor to investigate and assess damage—an issue likely to require discovery. If the court concludes that the defendant did not breach the contract, the bad faith claim will fail as a matter of law, and there will be no need for the parties to conduct discovery on the bad faith issue.

10

The court concludes that at this stage, it would promote judicial economy to bifurcate the breach of contract from the bad faith and statutory interest claims, and to stay discovery on the bad faith and statutory interest claims. The court concludes that it will not unfairly prejudice the plaintiff to bifurcate and stay, because it is likely that little discovery will be needed on the breach of contract claim. As for whether separate trials would violate the Seventh Amendment, it is premature for the court to determine whether to keep the claims bifurcated for purposes of trial. The court assumes that once the parties complete discovery on the breach of contract claim, one or both will file dispositive motions. If the court resolves the dispositive motions in favor of the plaintiff—finding that the defendant breached the contract—it then will confer with the parties to determine how much time they need for additional discovery on the bad faith and statutory interest claims, and about whether to join the claims for trial.

The court regrets how much time it has taken to decide this motion and notes that several times the parties have asked the court to amend the scheduling order. Most recently, the court extended the deadline for completing discovery to February 1, 2021 and the deadline for filing dispositive motions to February 26, 2021. Dkt. No. 32. The court also set deadlines for the parties to disclose the identities of their experts and the experts' reports. Id. Given this ruling, the parties may find this schedule workable, or may suggest something different. If the parties need to modify the scheduling order based on this ruling, they may file a stipulation or ask for a hearing.

### III. Conclusion

The court **GRANTS** the defendant's motion to bifurcate and stay pursuant to Rule 42(b). Dkt. No. 18.

The court **ORDERS** that discovery on the issues of bad faith and statutory interest is **STAYED** until further order of the court.

Dated in Milwaukee, Wisconsin this 8th day of September, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

12

Case 2:19-cv-01735-PP   Filed 09/08/20   Page 12 of 12   Document 33