UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHERMAN CREEK CONDOMINIUMS INC,

    Plaintiff,

v.                                         Case No. 19-cv-1735-bhl

MID-CENTURY INSURANCE COMPANY,

    Defendant.

## ORDER DENYING SUMMARY JUDGMENT MOTIONS

After suffering roof damage from an August 2017 hailstorm, Sherman Creek Condominiums, Inc. (Sherman Creek) submitted a claim to its property insurer, Mid-Century Insurance Company (Mid-Century). Mid-Century responded by offering to cover only spot repairs and refusing to pay to replace all the damaged roofs in Sherman Creek's condominium development. Sherman Creek then filed this lawsuit, asserting claims for: (1) breach of contract; (2) bad faith denial of coverage; and (3) statutory interest. (ECF No. 5-1 at 4–8.) Both Sherman Creek and Mid-Century have moved for summary judgment, in whole or in part. (ECF Nos. 81; 64). For the reasons explained below, both motions will be denied.

### FACTUAL BACKGROUND

On September 22, 2017, Sherman Creek made a claim against its Mid-Century insurance policy, seeking coverage for hail damage to its 31-building condo development in Jackson, Wisconsin. (ECF No. 5-1 at 3–4; ECF No. 72 at 4; ECF No. 67-3.) In response, Mid-Century commissioned an expert inspection and, based on that review, sent Sherman Creek a check for $49,307.43 as payment for the estimated cost of spot repairs to the roofs. (ECF No. 72 at 5.) After initially hiring a contractor to carry out the work, Sherman Creek elected not to proceed with the spot repairs and declined to cash Mid-Century's check. (ECF No. 72 at 6–7.)

In March 2019, Sherman Creek emailed Mid-Century to insist that rather than spot repairs, the roofs on all 31 buildings needed full replacement. (ECF No. 72 at 9.) Sherman Creek offered two primary reasons for its position. First, it explained that Mid-Century's policy guaranteed that

any shingles used for repairs would be similar to the original shingles, but the original shingles had been discontinued and no similar substitutes were now available. (*See* ECF No. 67-10.) Second, it contended that spot repairs were not feasible because the roofs had themselves been compromised. (*See id.*) It explained that these circumstances rendered Mid-Century's prior payment offer insufficient. (ECF No. 72 at 9, 14.) Sherman Creek provided its own estimate of the replacement cost: $2,169,099.96. (*Id.* at 14.) Mid-Century refused to accept Sherman Creek's position, leading to this lawsuit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson*, 477 U.S. at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Both Sherman Creek and Mid-Century have moved for summary judgment. Sherman Creek seeks summary judgment on Count I only, contending that the undisputed facts establish that Mid-Century breached its coverage obligations under the policy. (ECF No. 82.) Mid-Century seeks summary judgment on all three counts, insisting its denial of the requested coverage was reasonable as a matter of law. (ECF No. 65.) Because disputed issues of fact persist as to the coverage issues, both parties' summary judgment motions must be denied.

### I. Disputed Factual Issues Preclude Summary Judgment for Either Party on Count I.

In Count I of the complaint, Sherman Creek alleges that Mid-Century breached the terms of its insurance policy by failing to "[p]roperly and timely adjust" coverage of Sherman Creek's hail damage to include replacing in full the roofs of all the buildings in the Jackson condominium development. (ECF No. 5-1, at 4-5.) Each side contends the undisputed facts support its position on whether Mid-Century breached its policy commitments.

As both parties concede, Sherman Creek's claim for breach of the policy is governed by Wisconsin law. (*See* ECF No. 65 at 9; ECF No. 82 at 8); *see also Green Beginnings, LLC v. W. Bend Ins. Co.*, No. 20-CV-1661, 2021 WL 2210116, at *3 (E.D. Wis. May 28, 2021) (citing *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 670–71 (Wis. 2002) (citation omitted)) ("When determining 'which jurisdiction's law applies to a contractual dispute,' Wisconsin courts apply 'the law of the jurisdiction with which the contract has its most significant relationship[.]'"). Under Wisconsin law, an insurance policy is a contract. *Kemper Indep. Ins. Co. v. Islami*, 959 N.W.2d 912, 917 (Wis. 2021). "A claim for breach of contract requires proof of three elements: '(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages.'" *Gedemer v. Fond du Lac Sch. Dist.*, No. 2021AP976, 2022 WL 2137230, at *2 (Wis. Ct. App. June 15, 2022) (quoting *Brew City Redev. Grp., LLC v. Ferchill Grp.*, 714 N.W.2d 582, 588 (2006) *aff'd* 724 N.W.2d 879 (2006)).

For summary judgment purposes, the parties primary dispute concerns the second element: whether Mid-Century materially violated the terms of the policy. Under Wisconsin law, "[t]he interpretation of an insurance policy is a question of law when no extrinsic evidence is introduced to interpret the wording of the policy." *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 227 (Wis. 2002). The Court's role in interpreting insurance policies is "to effectuate the intent of the

contracting parties" and to construe the language "as it would be understood by a reasonable person in the position of the insured." *Estate of Sustache v. Am. Fam. Mut. Ins. Co.*, 751 N.W.2d 845, 850 (Wis. 2008) (internal quotations and citations omitted). Courts "must consider [a] policy as a whole to give reasonable meaning to the entire policy." *1325 N. Van Buren, LLC v. T-3 Grp., Ltd.*, 716 N.W.2d 822, 840 (Wis. 2006) (citing *Berg v. Schultz*, 526 N.W.2d 781, 783 (Wis. Ct. App. 1994)). Courts do not construe policies to cover risks insurers did not contemplate or underwrite and for which they did not receive a premium. *Sustache*, 751 N.W.2d at 850. Any doubts or ambiguities must be resolved against the insurer and in favor of the insured and coverage. *Rural Mut. Ins. Co. v. Welsh*, 633 N.W.2d 633, 636 (Wis. Ct. App. 2001). Further, when construing insurance policies, words "'are given their common and ordinary meaning.'" *J.G. v. Wangard*, 753 N.W.2d 475, 482 (Wis. 2008) (quoting *Danbeck v. Am. Fam. Mut. Ins. Co.*, 629 N.W.2d 150, 153 (Wis. 2001)).

The parties' competing coverage arguments involve alternate interpretations of the policy's "of like kind and quality" language. This provision states that, in the event of covered loss or damage, Mid-Century will "[r]epair . . . or replace the property with other property of like kind and quality." (ECF No. 67-15 at 42.) According to Sherman Creek, because *repair* of the roofs with replacement shingles of the same color, length, and dimension is impossible, the policy requires Mid-Century to *replace* the damaged roofs. (ECF No. 82 at 7.)

Sherman Creek supports its insistence that the policy requires replacement with two arguments. First, it contends the undisputed facts establish that there are no available shingles "of like kind and quality." (*Id.* at 9.) Sherman Creek asserts repeatedly that Mid-Century "has provided no evidence whatsoever of the existence of comparable shingles." (*Id.*) This argument confuses the state of the record. Contrary to Sherman Creek's suggestion, there is ample evidence that comparable shingles exist and are available for the repairs. For example, Mid-Century points to a report from Sherman Creek's adjuster identifying the "GAF Timberline" shingle in "Weathered Wood" as a potential replacement shingle to be used in repairs. (ECF No. 99 at 2–4.) The report describes the GAF Timberline shingle's characteristics, dimensions, and color as being a "match" or "similar" to Sherman Creek's original shingles. (*Id.*) Mid-Century also cites testimony from two other experts that comparable shingles are in fact available. (*Id.* at 8–10.) Even a letter that Sherman Creek obtained from GAF, challenging the plan to mix types of shingles as being contrary to the manufacturer's instructions, notes the existence of a "comparable" shingle.

(ECF No. 68 at 6.) This evidence is sufficient to create a genuine dispute of fact that precludes summary judgment in Sherman Creek's favor.

Sherman Creek next insists the record conclusively establishes that spot repairs are not feasible because such repairs would damage the surrounding shingles, leading to "a never-ending repair." (ECF No. 82 at 13; ECF No. 78 at 7–8.) It points to its expert's opinion that repairs to the shingles would create "more damage" and calling Mid-Century's expert's proposed procedure for conducting the spot repairs "improper." (ECF No. 82 at 13). Unsurprisingly, Mid-Century maintains that spot repairs are feasible. (ECF No. 67-6 at 19.) It cites its own expert's report, which proposes a procedure for the spot repairs. (ECF No. 75-2 at 6–7.) This is a quintessential genuine dispute of material fact. Each side has an expert insisting that its position on feasibility is correct. While Sherman Creek's expert criticizes Mid-Century's expert's plan as "improper," (ECF No. 82 at 13), it is not the Court's place to determine expert credibility on summary judgment—that determination is for the jury at trial. *See Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008) ("[I]n a case of dueling experts…it is left to the trier of fact…to decide how to weigh the competing expert testimony."). These competing positions on what is feasible are sufficient to defeat Sherman Creek's request for summary resolution.

Mid-Century's argument for summary judgment in its favor fares no better. Mid-Century contends that Wisconsin courts do not require repair materials to "match" original material. (ECF No. 65 at 10.) Based on this legal interpretation, the insurer contends it is entitled to summary judgment given that it has offered to pay the cost for spot repairs with shingles it contends are sufficiently comparable. (ECF No. 65 at 9–14). Even assuming Mid-Century is right on Wisconsin law, summary judgment remains inappropriate because the parties dispute whether the shingles available for the repairs are shingles "of like kind and quality," even if they do not "match." Sherman Creek has marshaled evidence that the proposed replacement shingles are not of like kind and quality, including both an email from a claims adjuster stating there are no "of like kind and quality" shingles and an expert report opining that the GAF Timberline shingles are not the same. (ECF No. 78 at 4, 6–9.)

The Court cannot resolve on summary judgment the issue of whether the comparable shingles available from GAF are of "like kind and quality" pursuant to the policy at issue. Both parties' summary judgment motions on Count I must therefore be denied.

## II. Mid-Century's Request for Summary Judgment on Counts II and III Fail Given the Factual Disputes on Coverage.

Sherman Creek's remaining claims, for bad faith damages and statutory interest, cannot be resolved at summary judgment given the Court's resolution of the parties' cross motions on the coverage claim. An insured's claims for bad faith and statutory interest pursuant to Wis. Stat. Section 628.46 require a breach of contract. *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978); *Brethorst v. Allstate Prop. and Cas. Ins. Co.*, 798 N.W.2d 467, 482 (Wis. 2011) ("[S]ome breach of contract by an insurer is a fundamental prerequisite for a first-party bad faith claim against the insurer by the insured."). Because the question of whether Mid-Century breached its obligations under the Policy must be resolved by the finder of fact, the Court cannot resolve the bad faith and statutory interest claims on summary judgment. Mid-Century's motion for summary judgment on these claims must therefore be denied.

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that Plaintiff's partial motion for summary judgment, ECF No. 81, is **DENIED**. **IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, ECF No. 64, is also **DENIED**.

Dated at Milwaukee, Wisconsin on September 21, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge